# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 27 2019, 11:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.T., B.T., and Z.T. (Minor Children)

and

S.T. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

November 27, 2019

Court of Appeals Case No. 19A-JT-1034

Appeal from the Elkhart Circuit Court

The Honorable Michael A. Christofeno, Judge

The Honorable Deborah A. Domine, Magistrate

Trial Court Cause Nos.
20C01-1903-JT-37
20C01-1903-JT-38
20C01-1903-JT-39

**Bailey, Judge.**

# Case Summary

[1]     S.T. ("Father") challenges the trial court order terminating his parental rights to his children, A.T., B.T., and Z.T. (collectively, "Children"). We address one dispositive issue on appeal: whether the trial court abused its discretion when it entered default judgment against Father. The Indiana Department of Child Services ("DCS") agrees that the termination of parental rights ("TPR") order was improper because DCS failed to provide Father with written notice of the request for default judgment at least three days prior to the hearing on that request.

[2]     We reverse and remand.

# Facts and Procedural History

[3]     On August 20, 2014, the Johnson County DCS office filed verified petitions alleging B.T. (born April 6, 2006) and Z.T. (born March 25, 2009), the sons of Father and St.T. ("Mother"), were children in need of services ("CHINS") because of domestic violence in the home. In May 2015, Father filed for a change of venue from Johnson County because he was living with his parents in Elkhart. The motion was granted and the CHINS cases were transferred to Elkhart County in June 2015. A third child, A.T., who was born of the marriage on September 15, 2015, was found to be a CHINS on May 16, 2016. She was placed with Father, under DCS supervision.

[4]     The DCS progress report of August 17, 2017, indicated Father had made significant progress and that the children were to have a trial visit with him because he was fully compliant with court-ordered services and had enhanced his ability to fulfill his parental obligations. On January 25, 2018, Father was granted full custody of his sons, B.T. and Z.T., who were placed with him.

[5]     On May 9, 2018, Elkhart DCS filed CHINS petitions for Father's sons because Father was unable to provide long-term housing for the Children. B.T. and Z.T. were placed in foster care, and Father's daughter, A.T., was also removed from Father and placed in foster care. On March 25, 2019, the court held a modification hearing, at which evidence showed Mother intended to move to Indianapolis, the children were exhibiting behavior issues, and the parents were not following through with parenting recommendations. On March 26, 2019, DCS filed petitions to involuntarily terminate Mother's and Father's parental rights to all three Children. On the same day, a DCS caseworker verbally told Father of the initial TPR hearing date of April 11, and she handed Father a "TPR Summons and Notice of Hearing and Notice of Possible Default Judgment" and the TPR petition. App. Vol. V at 12; App. Vol. VII at 67; App. Vol. VIII at 112. On April 1, Father's counsel entered his appearance for Father in the TPR actions.

[6]     On April 11, the court held the initial hearing for the termination of parental rights. Neither parent appeared at the hearing. DCS presented evidence related to service of process and notice of hearing to both parents. The DCS case manager and Father's attorney both informed the court that Father had stated

he could not attend the hearing on April 11 because he had to work. DCS moved for default judgment as to both parents. Father's attorney informed the court that Father "was hoping that [his attorney], on his behalf, would be allowed to enter a denial and set this for a trial." Tr. Vol. II at 231-32. The Guardian ad Litem requested that the court "find that default is in the best interest[s] of the children." *Id*. at 234.

[7] The trial court found that the parents had notice of the hearing and "the consequences of not appearing," and it entered default judgments terminating the parents' rights to Children. *Id*.[1] Father now appeals.[2]

# Discussion and Decision

[8] At the April 11, 2019, TPR initial hearing, DCS orally requested that the court enter a default judgment against the parents, and the court granted that request. However, as DCS now concedes, it did not provide Father with written notice of the request for default judgment at least three days prior to the hearing on that request as required by the express language of Trial Rule 55(B).[3] The

---

[1] The trial court stated: "I'm going to enter a default judgment under the termination cases…." *Id*. And we note that the trial court did not hear evidence on the merits of the termination actions. *See Young v. Elkhart Cty. Off. of Fam. and Child.*, 704 N.E.2d 1065, 1069 (Ind. Ct. App. 1999) (noting where DCS failed to present evidence to support the TPR, the judgment was a "true default judgment").

[2] Mother does not participate in this appeal.

[3] "If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by a representative, his representative) shall be served with *written notice of the application for judgment* at least three [3] days prior to the hearing on such application." T.R. 55(B) (emphasis added). There is no question that Father appeared in the TPR action with counsel on April 1, 2019.

language of that rule "is not superfluous and strict adherence to the notice provision is required." *Evansville Garage Builders v. Shrode*, 720 N.E.2d 1273, 1277 (Ind. Ct. App. 1999), *trans. denied*. Although the Summons DCS hand-delivered to Father on March 26 stated that the court "may terminate the parent-child relationship" if Father failed to appear for the April 11 hearing, it did not inform Father that DCS was seeking, or would seek, a default judgment at the April 11 hearing. App. Vol. V at 12; App. Vol. VII at 67; App. Vol. VIII at 112. Rather, the Summons expressly stated that the April 11 hearing was "for an Initial Hearing." *Id*. Notice of an initial TPR hearing alone does not satisfy the specific notice requirements of Trial Rule 55(B). *See Shrode*, 720 N.E.2d at 1277 (holding advance notice of a progress hearing that did not also give notice of an application for default judgment was not sufficient under Trial Rule 55(B)).[4] The trial court abused its discretion when it entered default judgment against Father.

[9] Reversed and remanded for further proceedings with respect to Father.

Najam, J., and May, J., concur.

---

[4] Because we hold the default judgment was improper under the trial rules and, therefore, must be reversed, we do not address Father's due process claim. *See, e.g.*, *Snyder v. King*, 958 N.E.2d 764, 786 (Ind. 2011) (noting the "cardinal principle" that we will not pass upon a constitutional question unless it is "absolutely necessary to do so").